HON. JNO. H. BURFORD, CHIEF JUSTICE.
HON. BAYARD T. HAINER,
HON. BENJ. F. BURWELL,
HON. CLINTON .F. IRWIN,
HON. FRANK E. GILLETTE,  } ASSOCIATE JUSTICES.
HON. J. L. PANCOAST,
HON. M. C. GARBER,

IN RE BANK OF INDIAHOMA, *Insolvent,* J. M. BELLAMY, *Receiver,* v. M. S. SIMPSON.

(Filed September 8, 1906.)

INSOLVENT BANK—Receivership—Priority of Creditors—Replevin.
Where a bank takes a chattel mortgage upon a stock of merchandise, to secure a loan made by the bank to the mortgagor, on the same day the mortgage was executed, but does not record the same until after the expiration of four months, and when such mortgage is accompanied by an agreement that the mortgagor can retain possession of the merchandise, and sell the same at retail, applying the proceeds to the payment of the mortgage, and where

subsequent to the making of such mortgage and prior to its being recorded, another creditor, without notice of such mortgage, takes a mortgage on the same stock of goods to secure a bona fide debt due him, and with the consent of the mortgagor takes possession of the stock of merchandise, and where the bank brought an action of replevin against the mortgagee in the second mortgage in the probate court, and judgment was rendered in favor of the defendant in that action for the return of the property or the value thereof, such value being fixed at $334.62, and an appeal was taken to the district court, and there the appeal was regularly dismissed and where the bank retained the property taken under the replevin writ, sold the same and collected the proceeds thereon in June 1903, and on the 2nd day of July, 1903, said bank became insolvent, and a receiver was regularly and legally appointed, who immediately qualified and took possession of the property and assets of the bank: **Held:** That unless it is shown by the evidence that the property or the proceeds thereof actually went into the hands of the receiver, such creditor is not a preferred creditor as to the general assets of the bank.

(Syllabus by the Court.)

*Error from the District Court of Comanche County; before Frank E. Gillette, Trial Judge.*

*Wilford M. Smith,* and *Parmenter & Myers,* for plaintiff in error.

*J. A. Baker,* and *J. S. Harmon,* for defendant in error.

### STATEMENT OF FACTS

This case arose in the district court of Comanche county, on the report of the Hon. R. J. Ray, who had been appointed referee by the court. This case was submitted to the referee upon an agreed statement of facts. The referee made his findings of fact and conclusions of law. The agreed statement of facts is as follows:

"1. That the foundation for movant's claim for priority is the judgment, a copy of which is hereto attached and marked Exhibit 'A,' and the production of any other or

more of the record upon which the said judgment as shown by the attached copy is founded is waived.

"2.   It is further agreed that the Bank of Indiahoma, retaining the property described in the judgment attached under its bond, and writ of replevin in the cause in which judgment was rendered, sold the said property on June—— 1903, and collected the money for the sale thereof, and that the amount for which the bank sold the property exceeded the amount, to wit, $334.62, adjudged to said M. S. Simpson, and that the bank retained said money and has not paid the same to M. S. Simpson, or any one for him.

"3.   That within ten days from the rendition of the judgment attached hereto, the plaintiff, Bank of Indiahoma, gave an approved appeal bond, and took its appeal to the district court of said county where the appeal was afterwards dismissed by the court.

"4.   That the receiver, J. M. Bellamy, now has in his hands the moneys of the said bank of over $1500.00.

"5.   That the receiver J. M. Bellamy was appointed such receiver on the 2nd day of July, 1903, and immediately entered upon the duties of such receivership of the bank of Indiahoma.".

The findings of fact, and conclusions of law by the referee are as follows:

"In the District Court of the Seventh Judicial District of Oklahoma, in and for Comanche County.

"*In Re Bank of Indiahoma.*

"REPORT OF REFEREE.

"475.

"To the Hon. F. E. Gillette,
   "Judge of said Court:

"Pursuant to order of court made April 9th, 1904, referring the above styled cause to determine the question of

priority of the lien of M. S. Simpson, and all questions of law and fact relating thereto, a day for hearing said cause was set by agreement of the parties at which time the receiver, by W. H. Smith, his attorney, and the Ruston State Bank, a creditor, by Parmenter & Myers, its attorneys, and M. S. Simpson by his attorneys Baker & Cobb, appeared, and submitted an agreed statement of facts which is herewith returned, from which I make the following finding of fact.

"On the 5th day of May, 1903, M. S. Simpson recovered a judgment in replevin in the probate court of Comanche county against the Bank of Indiahoma, for the return of certain personal property for the purpose of foreclosing a mortgage, or in case the same could not be returned, the value thereof fixed at $334.62, with interest at the rate of 12 per cent. per annum from the 28th day of January, 1903, and costs of suit assessed at $48.50, from which judgment the Bank of Indiahoma, within ten days, appealed to the district court of said county, where the appeal was afterwards dismissed by the court; that the bank retained the property and sold the same for an amount greater than the judgment; that the receiver, appointed July 2nd, 1903, now has in his hands the moneys of said bank to the amount of over $1500.00.

"CONCLUSIONS OF LAW.

"1.    Upon the dismissal of the appeal by the district court, the judgment of the probate court became final and fixed the right of possession of the property, and a special ownership therein, in Simpson.

"2.    The wrongful sale of the property by the bank was simply a changing of the form of the property, and did not destroy Simpson's lien, but the lien must be held to be impressed upon the property in its new form.

"3.    Independent of the mortgage lien, Simpson's claim being for the wrongful conversion of property by the bank without his consent, he is entitled to priority over depositors or other voluntary creditors.

"It is contended by counsel for the other creditors, and with a great deal of force, that before the money in the hands of the receiver, can be impressed with the lien, it must be shown that the paticular money, for which the property was sold, not only came into the hands of the bank, but into the hands of the receiver. If this were true, it would be almost impossible to establish a lien. While there are some authorities which support this contention, I am of the opinion that the great weight of authority is against it.

"It is also contended that Simpson may look to the sureties on the appeal bond and is therefore not entitled to a priority. I think this contention is not sound, for the reason that the sureties have the right to have the property of the principal first subjected to the payment of his debts before resort is had to the sureties.

"I, therefore, conclude that Simpson's claim should be adjudged a first lien upon the money in the hands of the receiver; that he pay to M. S. Simpson the sum of $334.62, and interest at 12 per cent. from the 28th day of January, 1903, to the 2nd day of July, 1903, and $48.50, costs.

"R. J. RAY,
"Referee."

To these findings of fact and conclusions of law, objections were filed, and a motion made to set aside and hold for naught the referee's report on the ground that the conclusions of law found by the referee from the findings of fact are erroneous and wrong, and not warranted by the facts, and which motion to vacate was overruled by the court, and exceptions saved by the appellant. A motion was also made by the appellee, M. S. Simpson, through his attorney, to confirm the report of the referee, which motion was by the court sustained, the report of the referee confirmed, and judgment rendered in accordance with the report, to which exceptions were saved, and the case brought here for review.

Opinion of the court by

IRWIN, J.: The only assignment of error relied upon by the plaintiff in error to reverse this case, is that the findings of fact and conclusion of law of the referee were not supported by the evidence, and were erroneous as legal conclusions. We have examined the stipulation of facts and the record of the proceedings in the case as presented to the referee, and find that the record shows that on the 29th day of August, 1902 J. C. Gilmore, and O. B. Gilmore borrowed the sum of five hundred dollars from the plaintiff in error, the Bank of Indiahoma, and gave to the bank a note and mortgage. At the time of the execution of said mortgage, there was an agreement by the said Gilmore, and the president of said bank, on behalf of said bank, that the goods covered by said mortgage should be sold in the usual course of retail trade, with the understanding and agreement that the expenses of said business should be deducted and the remainder of the proceeds of the sale accounted for to the defendant and applied upon this indebtedness. That the said mortgage was not recorded until the 30th day of January, 1903, at 1:10 P. M. The record further shows that on the 28th day of January 1903, the said Gilmore was indebted to M. S. Simpson for goods and merchandise sold him, in the sum of $425.72. That to secure the payment of said amount, he, on that date, executed a note and chattel mortgage to said M. S. Simpson. That on the 29th day of January, and before the mortgage to the bank was recorded, said Simpson, with the consent of said Gilmore, took possession of the mortgage property. That thereupon the bank brought an action of replevin against Simpson to recover these goods, on the

strength of their mortgage. This action was brought in the probate court of Comanche county, and resulted in a judgment in favor of Simpson, for a return of the property, or in the event that cannot be done, for the value thereof, fixed at $334.62. That from this judgment, an appeal was taken by the bank to the district court of Comanche county. That afterwards, the said appeal was regularly dismissed in said court. The record further discloses that the bank having secured the possession of the property by a writ of replevin, sold the same and collected the proceeds thereon in the month of June, 1903. That on the 2nd day of July, 1903, the bank became insolvent, and passed into the hands of a receiver regularly appointed by the court, who immediately took possession of the property and assets of the bank, but the record and stipulation of fact does not show that any of the proceeds of the sale was received by the receiver, or came into his hands. These facts were all set up in the record before the probate court and in the stipulation filed with the referee, and upon this state of facts, the referee found as a conclusion of law that the defendant in error, Simpson, was a preferred creditor, and his was a preferred claim as against the assets of the insolvent bank in the hands of the receiver.

It is claimed by attorneys for plaintiff in error that as it was not clearly shown that the identical property, or the proceeds thereof passed into the hands of the receiver, or that as the money received from the sale of the goods which the court held belonged to Simpson were intermingled with other money in the bank so as to not be distinguishable, it cannot be treated as a preferred claim.

We think this contention is a correct conclusion of law as held by this court in the case of *Charles T. Cherry v. The*

*Territory,* reported in this volume, opinion written by Justice Burwell, at the June term, filed September 5th, 1906. This court in that case, says:

"The evidence wholly fails to show that any of the money or any proceeds thereof ever reached the receiver. Unless the plaintiff can do this by a clear preponderance of the evidence it must fail. The rule adopted here has been followed by the great majority of the courts that have passed upon the question." Citing in support of this doctrine, *Fletcher v. Sharp, el al.* (Ind.) 19 N E. 142; *Stephens v. Stephens,* (Ky.) 12 S. W. 192; *Burnham v. Burnham,* (Wis.) 62 N. W. 906; *Gianella v. Mansen* (Wis.) 63 N. W. 1047; *Henry v. Martin,* (Wis.) 60 N. W. 263.

On the authority of this case, and the authorities therein cited, the decision of the district court is reversed and remanded at the costs of the appellee.

Gillette, J., who presided in the court below, not sitting; all the other Justices concurring.