BURMEISTER WOODWORK COMPANY, INC., Respondent, v. FRIEDEL, Appellant: PORTRAIT HOMES, INC., Defendant.

*No. 291.   Argued October 2, 1974.—Decided October 29, 1974.*
(Also reported in 222 N. W. 2d 647.)

294

For the appellants there was a brief by *Herbert L. Usow, S. C.* of Milwaukee, and oral argument by *Mr. Usow.*

For the respondent there was a brief by *Cook & Franke, S. C.*, attorneys, and *Robert F. Johnson* of counsel, all of Milwaukee, and oral argument by *Mr. Johnson.*

HANLEY, J. The following issues are presented on appeal:

1. Is it necessary to find that an officer of a corporation has received a benefit from his misappropriation of trust funds under sec. 289.02 (5), Stats., in order to allow one who has provided materials and labor and is thereby a beneficiary of the trust to recover from that officer?

2. Is a showing of wrongful intent required to establish liability under sec. 289.02 (5), Stats.?

*Benefit to officer.*

The decision of this court in *Weather-Tite Co. v. Lepper* (1964), 25 Wis. 2d 70, 130 N. W. 2d 198, is directly on point. In that case, the plaintiff provided materials to the Super Seal Company, which used the materials for the improvement of homes. Super Seal's customers paid for the improvements made and Super Seal used the sums paid it for expenses in the ordinary and normal operation of its business. The plaintiff commenced an action against the defendant who was responsible for the transactions and the application of the payments as the company's president.

After discussing the history of the statute in question, then sec. 289.02 (4), Stats. 1963, this court stated:

"Clearly plaintiff has supplied 'materials used for such improvements' and the statute requires no more. It is stipulated that the materials supplied by plaintiff were incorporated by Super Seal into building improvements, and that the owners of such buildings paid Super Seal for its work. The statute makes no other requirement than that the materials be 'used for such improvements;' it leaves no room for judicial construction. Defendant, having expended the trust funds for purposes other than the payment of claims as provided in the statute, is a converter of those funds and personally liable to plaintiff for the amount of its claim." *Weather-Tite Co. v. Lepper, supra,* page 74.

We find no requirement that the corporate officer responsible for the misappropriation of the funds must receive a benefit from his acts before he may be held personally liable.

The defendant here attempts to distinguish *Weather-Tite* on the grounds that the defendant in that case received a benefit because he was Super Seal's salaried president and he received some of the misappropriated funds in the form of his salary. The decision, however, makes no mention of Lepper receiving a salary or that the misappropriated funds were used to pay that salary. The funds were used for the ordinary and normal expenses of the business. The only important point is that they were used for purposes other than the payment of claims as provided in the statute.

The defendant here was responsible for the money received from the loans which were secured by mortgages. He used them to pay expenses incurred in the ordinary course of the corporation's business. He did not pay the plaintiff in full for labor and materials furnished in connection with the construction of the three homes. The money received from the loans was to be held in trust under sec. 289.02 (5), Stats., and by using those funds for other purposes, the defendant became personally liable to the plaintiff for the amount still owed it.

Since the decision in *Weather-Tite Co. v. Lepper, supra,* the statute in question has been amended and renumbered sec. 289.02 (5), Stats., Laws of 1967, ch. 351. The amendment is an expansion without major change of the former statute. It specifically ties in the misappropriation of trust funds to sec. 943.20 dealing with theft. It also specifically provides that officers, directors or agents of corporations responsible for misappropriations are criminally liable for the misappropriations. Finally, it allows for the tracing and recovery of the misappropriated funds to shareholders of the guilty corporation who,

although not responsible for the misappropriation, receive such sums in the form of salary, dividends, loan repayments, capital distribution or otherwise. The legislative council note on file with the Legislative Reference Library indicates that the amendment was made in part to make the statute consistent with the decision in *Weather-Tite*. The amendment was not enacted to limit this court's interpretation of the statute.

*Wrongful intent.*

The defendant contends that he did not misappropriate the money received from loans because he used it in good faith to make reasonable disbursements for the purpose of preserving Portrait Home's ability to pay the statutory beneficiaries. This position is incorrect. Again, *Weather-Tite Co. v. Lepper, supra,* is on point. As in Friedel's case, the president there used the trust funds to pay the expenses of the corporation incurred in the ordinary and normal operation of its business. The defendant was found liable because he expended the funds for purposes other than the payment of claims as provided in the statute.

Sec. 289.02 (5), Stats., provides that proceeds of any mortgage for improvements upon the mortgaged premises ". . . constitute a trust fund in the hands of the prime contractor . . . to the amount of all claims due or to become due or owing from the prime contractor . . . for labor and materials used for the improvements, until all the claims have been paid." Under this section, the funds can only be used for the payment of claims of the beneficiaries until all such claims are paid. As was stated in the trial court's decision: "Section 289.02 (5) is not concerned with the financial problems of corporations."

The defendant also argues that intent—mental state of mind—is an important element in determining whether Friedel's actions as "trustee" of the trust fund created by sec. 289.02 (5), Stats., were wrongful. *Estate of Gehl*

(1958), 5 Wis. 2d 91, 92 N. W. 2d 372, is cited to support this position.

*Estate of Gehl, supra,* is distinguishable. In that case, the plaintiffs were the beneficiaries of a trust. The trust assets were shares of stock in Gehl Guernsey Farms, Inc. The trustees, in addition to their role as such, were also the controlling stockholders of the corporation in their own names. The trustees as directors of the corporation so managed the corporation that no dividends were declared. They claimed this was necessary and sound business judgment because all the profits of the company had to be retained to keep the company's competitive position. This court held that until there is a showing that dividends could and should have been paid under sound business practices, the trustees could not be charged with misconduct for failing to vote for payments of dividends. A conflict of interest, created by the testator who created the trust and who also was responsible for the trustees being given controlling interest in their individual capacities was noted.

In this case, Friedel had no conflicting interests because under sec. 289.02 (5), Stats., he could do only one thing with the trust funds and that was to pay the subcontractors. Only after that was done was he entitled to use the funds for corporate purposes. The fact that the corporation needed funds for other purposes did not change the limitation on the use of the trust funds.

The defendant raises two other questions dealing with the issue of intent. These are: (1) The showing of wrongful intent is required because the statute makes it a crime to misappropriate the trust funds; and (2) if it is found that it is not necessary to show wrongful intent on the part of the misappropriator, then the statute is unconstitutional as involving an unreasonable classification and also as being a deprivation of property without due process of law. We think this position is without

merit. First, no criminal conviction has resulted in this case. Secondly, Friedel was given an opportunity to defend himself in a court of law on a purely civil matter. No charges were made as to criminal conduct and there were no violations of his constitutional rights.

The defendant argues that a wrongful state of mind must be proved under the statute. In support of this position the case of *Pauly v. Keebler* (1921), 175 Wis. 428, 185 N. W. 554, is cited. That case held that ". . . a conviction under this statute cannot be had without proof beyond a reasonable doubt of an intent to defraud . . . ." (P. 436).

The present action, however, is a civil one rather than a criminal one. Regardless of the criminal sanction imposed by the statute upon misappropriators, the statute makes the money received by the corporation from construction loans a trust fund. In the case of *In re Bossell, Van Vechten & Chapman* (1966), 30 Wis. 2d 215, 218, 219, 140 N. W. 2d 255, this court, in discussing sec. 289.536, Stats. 1965, which was a statute similar to sec. 289.02 (5), but dealt with funds received by contractors for public improvements, said:

"The language of the section creates a trust of funds due or to become due in payment for a public improvement for the benefit of claims directly related to such public improvement and a breach of that trust by a contractor or subcontractor constitutes a theft. Designating a breach of the trust a theft is an added sanction to insure the compliance by a contractor or subcontractor of his trust obligation to pay project claims which he owes from project payments."

The criminal sanction, then, is separate from the civil liability for conversion of the trust funds. The defendant, here, was found to be personally liable for the conversion of the trust funds, not guilty of a crime. In a civil action for conversion of trust funds it is not necessary to show wrongful intent to defraud.

Friedel's argument that, if wrongful intent need not be proven, sec. 289.02 (5), Stats., is unconstitutional because it unreasonably makes contractors alone subject to criminal penalties without proof of such intent is without merit. This is not a criminal case. If it were, under *Pauly v. Keebler, supra,* it would be necessary to prove such an intent. The reasonableness of the classification and the necessity for the statute were fully discussed in *Pauly v. Keebler, supra,* and the statute was there found to be constitutional.

This court also held in *Pauly v. Keebler, supra,* pages 431, 434, 435, that the statute did not unconstitutionally deprive the contractor of his property rights. It is important to note that the funds upon which the statute imposes the trust were received by the contractor for a particular purpose, the construction of improvements upon property. The statute imposes the trust to insure that one who receives money for this purpose uses it to that end.

The prime contractor does not actually own the funds. His only interest is that of a trustee.

We conclude that it is not necessary under the statute to show that the defendant Friedel received benefits from the misappropriation of the trust funds in order for the plaintiff to recover from defendant. Also, that a showing of wrongful intent is not required to establish liability under sec. 289.02 (5), Stats.

*By the Court.*—Judgment affirmed.