W.H. MAJOR & SONS, INC., Plaintiff-Respondent and
Cross-Appellant,

v.

Ronald KRUEGER, Defendant-Appellant and
Cross-Respondent.

Court of Appeals

*No. 82–2418. Submitted on briefs June 8, 1984.—
Decided April 18, 1985.*
(Also reported in 369 N.W.2d 400.)

For the defendant-appellant and cross-respondent the cause was submitted on the briefs of *Thomas L. O'Neil* and *O'Neil & Ziwisky* of Watertown.

For the plaintiff-respondent and cross-appellant the cause was submitted on the briefs of *T. Michael Schober* of New Berlin.

Before Gartzke, P.J., Dykman, J. and Bruce F. Beilfuss, Reserve Judge.

BEILFUSS, Reserve Judge. This is an appeal and cross-appeal from a judgment awarding plaintiff W.H. Major & Sons, Inc. (Major), a landscaping subcontractor, $7,098.00 together with costs and interest against the defendant Ronald Krueger, an officer and shareholder of T–K Incorporated, under sec. 779.02(5), Stats., the theft by contractor statute. T–K was a contractor and subcontractor providing landscaping services for several public and private improvement projects. T–K subcontracted with Major for its services on several of these projects. Section 779.02(5) provides that a prime contractor's or subcontractor's officers and shareholders are personally liable on claims for private improvement project work done for the prime contractor or subcontractor when that prime contractor or subcontractor is paid for the project by the property owner.

The issue on appeal is whether the trial court erred by granting Major judgment for the full amount paid to T–K by a property owner for an improvement project, $7,098.00. Major's claim for work done on that property was $233.75, a fraction of the total amount paid by the property owner to T–K for the entire project. Krueger argues in his appeal that Major was entitled under the statute to recover only the amount of Major's claim for work it did on that property owner's improvement project, *i.e.,* $233.75. T–K owed Major for improvements on other properties and Major previously obtained a judgment against T–K for $19,200.62.

We agree with Krueger's contention on appeal that Major may only recover from Krueger for work Major did on T–K's private improvement projects for which Major proved payment to T–K by the owner of the property improved. We modify the judgment to award $233.75 to Major, which is the amount of Major's claim for work it did on the improvements for which T–K received payment by the owner of the property, and remand for calculation of costs and interest on the modified judgment.

Major contends in its cross appeal that (1) the trial court erred by requiring Major to prove payment to T–K by the owner of the property improved rather than a simple receipt of funds for work done, (2) sec. 779.16, Stats., which governs theft by contractors for public improvements, imposes personal liability on Krueger for Major's claims against T–K, and, (3) the trial court erred by not finding that Krueger, with an improper motive, caused T–K to breach its contracts with Major. We affirm the portion of the judgment cross-appealed. Major was required under sec. 779.02(5), Stats., to prove the owner of the improved property paid T–K for those improvements in order to recover against Krueger. With regard to the public improvement projects, sec. 779.16 does not impose personal liability on Krueger for claims against T–K. Finally, the trial court's findings as to Krueger's lack of improper motive are not clearly erroneous.

Section 779.02(5), Stats., imposes personal liability on a corporation's shareholders, officers and others for claims for work done on private improvement projects by the claimant for the corporation when that corporation is acting as prime contractor or subcontractor on those projects for which an owner has paid the corporation:

[A]ll moneys paid to any prime contractor or subcontractor by any owner for improvements, constitute a

trust fund only in the hands of the prime contractor or subcontractor to the amount of all claims due or to become due or owing from the prime contractor or subcontractor for labor and materials used for the improvements . . . . The use of any such moneys by any prime contractor or subcontractor for any other purpose . . . is theft by the prime contractor or subcontractor of moneys so misappropriated . . . . If the prime contractor or subcontractor is a corporation, such misappropriation also shall be deemed theft by any officers, directors or agents of the corporation responsible for the misappropriation. Any of such misappropriated moneys which have been received as salary . . . or otherwise by any shareholder of the corporation not responsible for the misappropriation shall be a civil liability of the shareholder and may be recovered and restored to the trust fund specified in this subsection by action brought by any interested party for that purpose.

*Id.; See Burmeister Woodwork Co. v. Friedel,* 65 Wis. 2d 293, 297, 222 N.W.2d 647, 649–50 (1974).

Section 779.16, Stats., imposes civil and criminal liability on prime contractors and subcontractors for public improvement projects when the prime contractor or subcontractor uses money paid for improvements for purposes other than payment of claims:

All moneys, bonds or warrants paid or to become due to any prime contractor or subcontractor for public improvements are a trust fund only in the hands of the prime contractor or subcontractor and shall not be a trust fund in the hands of any other person. The use of the moneys by the prime contractor or subcontractor for any purpose other than the payment of claims on such public improvement, before the claims have been satisfied, constitutes theft by the prime contractor or subcontractor and is punishable under s. 943.20. This section shall not create a civil cause of action against any person other than the prime contractor or subcontractor to whom such moneys are paid or become due. Until all claims are paid in full, have matured by notice and filing or have expired, such money, bonds and war-

rants shall not be subject to garnishment, execution, levy or attachment.

*Id.*

Major provided labor and materials relating to landscaping on several public and private improvement projects to T–K, a corporation providing landscaping services both as a subcontractor and prime contractor. Krueger was a shareholder, director, and officer of T–K. Major would invoice T–K for labor and materials furnished, carrying the balance due on an open account. T–K made some payments but the account was not settled, and Major obtained a judgment against T–K for $19,200.62. T–K has ceased business and is unable to meet its obligations.

The parties stipulated that only three of the projects involved private improvements, and that T–K was paid in full on all projects except three where the Internal Revenue Service levied against T–K's receipts. Payment to T–K by an owner of the improved property was shown at trial, however, for only one project.

Major commenced this action against Krueger and T–K's only other officer, director and shareholder who was dismissed by stipulation upon paying Major $5,000.-00, leaving a balance due of $14,200.62. Major's claim was premised on (1) secs. 779.02(5) and 779.16, Stats., which establish trust funds in the hands of prime contractors or subcontractors for payment of claims for work performed on private and public improvement projects, respectively, (2) *Sprecher v. Weston's Bar, Inc.*, 78 Wis. 2d 26, 253 N.W.2d 493 (1977), which imposes liability on corporate officers who, with improper motive, cause the corporation to breach a contract, and (3) Krueger's allegedly fraudulent misrepresentation of T–K's ability to fulfill its obligations. The misrepresentation claim was dismissed at trial for lack of evidence and is not part of this appeal.

The trial court rejected the claim under *Sprecher,* finding that no improper motive was established. The court's analysis of the statutory claim blended sec. 779.-02(5), Stats., and sec. 779.16. The court concluded that Major showed payment by an owner, as required by the statutes, for only one improvement project, and that Major could recover from Krueger, as T–K's officer and director, for only that project. That sole project was referred to as the "Watertown Condos," and the property owner, Al Feldner, paid T–K $7,098.00 for T–K's work on that job. Major billed T–K $233.75 for its work on the Watertown Condos. The trial court awarded Major the entire payment, $7,098.00.

Major contends the trial court erred in requiring proof of payment by an owner. Major argues that the statutes only require "that T–K received money that is now due [Major] . . . for the work and supplies [Major] contributed." Major argues with regard to the public improvement jobs that sec. 779.16, Stats., should be construed to impose personal liability on corporate officers and directors, here Krueger, despite sec. 779.16's language to the contrary. Major also contends that the trial court erred in not finding that Krueger had an "improper motive" so as to impose liability under *Sprecher.*

Krueger contends that the trial court erroneously granted Major judgment for the full amount paid by the property owner Feldner to T–K, instead of granting judgment only in the amount of Major's claim for work it did on Feldner's property, $233.75.

### Private Projects

Section 779.02(5), Stats., requires that payment be made by an "owner" to establish the trust fund. The trial court found that payment by an owner to T–K

was established only with respect to the Watertown Condos project. Major contends that the statute only requires that T–K received money that it owes Major for labor and supplies, and that direct payment by an owner need not be shown. Major cites *In re Bossell, Van Vechten & Chapman*, 30 Wis. 2d 215, 220–21, 140 N.W. 2d 255, 258 (1966) for the proposition that any moneys owed a subcontractor by another must be held as a trust fund under sec. 779.02(5), regardless of proof of payment by an owner.

*In re Bossell* is not applicable. It interpreted a predecessor to sec. 779.16, Stats., which establishes the statutory trust fund applying to public improvement projects. Section 779.16 did not and does not require payment by an owner.

Section 779.02(5), Stats., which applies to private improvement projects, requires payment by an owner to establish the trust fund, and case law confirms this prerequisite. In *Visser v. Koenders,* 6 Wis. 2d 535, 537, 95 N.W.2d 363, 364 (1959) the court stated:

> The trust in favor of the plaintiffs arises not from general principles of equity but is the creature of statute when the conditions prescribed by sec. 289.02(4), Stats. [predecessor to sec. 779.02(5)], appear. *The principal condition is, first of all, that the money shall have been paid to the contractor by the owner.* Without the aid of this statute there is no trust. Equity will not amend the statute which created the trust by declaring that the statutory requirement is immaterial to the existence of the trust fund. [Emphasis added.]

A successful claimant must establish or "trace" payment by an owner to the contractor or subcontractor. In *Simonson v. McInvaille,* 42 Wis. 2d 346, 353, 166 N.W.2d 155, 159 (1969) the court denied a claim because the claimant failed to trace payment:

The plaintiff has failed to establish that Home Service, Inc., performed any home improvement contract for which it received payment by an owner and in which materials obtained from Contractors Service, Inc., were used and not paid for. Without such a tracing, there is not sufficient proof from which a money judgment could be determined.

The trial court found, with the exception of the Watertown Condos project, no evidence was presented that the owners of the improved properties paid the prime contractor before the prime contractor paid T–K, and that Major only showed "that on each of several jobs some payment was made to T–K by someone." On the other two private improvement projects the evidence establishes only that T–K was paid by prime contractors. There is no evidence showing payment by owners of the improved properties, and Major refers to none. Major instead asks this court to presume the owners paid the prime contractors, contending that a prime contractor would presumably not pay a subcontractor until the owner paid the prime contractor for the work. Section 779.02(5), Stats., does not allow payment by an owner to be presumed; evidence on this issue was necessary.

## Public Projects

The remaining jobs were public improvement projects, for which sec. 779.16, Stats., does not impose personal liability on persons other than the prime contractor or subcontractor. The trial court incorrectly analogized sec. 779.16 to sec. 779.02(5) and stated that: "These statutes [impose] . . . almost absolute liability [on] the officer of a contracting corporation . . . ." The court, however, denied Major's claim for its work

on the public improvement projects because payment by an owner of the property was not shown.

Section 779.16, Stats., unlike sec. 779.02(5), does not require payment by an owner. The court's decision regarding the public improvements was correct, however, even though its reasoning was wrong. "Whether the ground assigned by the trial judge . . . is correct is immaterial if, in fact, the ruling is correct and the record reveals a factual underpinning [to] . . . support the proper findings." *Mueller v. Mizia*, 33 Wis. 2d 311, 318, 147 N.W.2d 269, 273 (1967). It is undisputed that Krueger was an officer, director and shareholder of T–K, and that sec. 779.16 does not impose liability on persons other than the contractor or subcontractor.

Major contends that because sec. 779.02(5), Stats., imposes personal liability on corporate officers and directors for claims on private projects, and both sec. 779.02(5) and sec. 779.16 are intended to protect material and labor suppliers (*compare State v. Wolter*, 85 Wis. 2d 353, 365, 270 N.W.2d 230, 237 (Ct. App. 1978) (private projects) *with Morris F. Fox & Co. v. State*, 229 Wis. 44, 49, 281 N.W. 666, 668 (1938) (public projects)), sec. 779.16 should be construed to impose personal liability on officers and directors. The two statutes, however, explicitly specify different liable parties. The unambiguous language of sec. 779.16 controls our interpretation; that section does "not create a civil cause of action against any person other than the prime contractor or subcontractor . . . ." Sec. 779.16. Krueger is not personally liable on the public projects.

## Interference with Contract

Major contends the trial court erred in rejecting its claim against Krueger that is premised on *Sprecher v. Weston's Bar, Inc.*, 78 Wis. 2d 26, 253 N.W.2d 493

(1977). In *Sprecher* the supreme court held a corporate officer liable for causing, with an improper motive, a breach of contract by the corporation:[1]

> If a director or managing officer acting *bona fide* procures, causes or participates in authorizing a breach of contract between his company and a third person, he may well be regarded as protected only by a conditional privilege, which will be destroyed by a wrongful motive.

*Id.* at 40, 253 N.W.2d at 499 (quoting *Lorenz v. Dreske,* 62 Wis. 2d 273, 287, 214 N.W.2d 753, 760 (1974)).

The "conditional privilege" that generally protects officers from liability is intended to insure a degree of freedom for corporate officers to act in the interests of the corporation. The court stated in *Lorenz v. Dreske,* 62 Wis. 2d at 286–87, 214 N.W.2d at 760:

> An agent is not relieved from liability by the fact that he is acting on account of his principal, except where he is exercising a privilege of the principal or where he himself has a privilege to act for the benefit and protection of the principal. If a director or managing officer acting *bona fide* procures, causes or participates in authorizing a breach of contract between his company and a third person, he may well be regarded as

---

[1] Improper motive is an element of a claim under *Sprecher,* but not of a claim under sec. 779.02(5), Stats. The supreme court rejected a good faith defense to a claim of misappropriation under the predecessor to sec. 779.02(5) in *Burmeister Woodwork Co. v. Friedel,* 65 Wis. 2d 293, 299, 222 N.W.2d 647, 650–51 (1974):

The defendant contends that he did not misappropriate the money received from loans because he used it in good faith to make reasonable disbursements for the purpose of preserving Portrait Home's ability to pay the statutory beneficiaries. This position is incorrect. Again, *Weather-Tite Co. v. Lepper* [25 Wis. 2d 70, 130 N.W.2d 198 (1964)], is on point. As in Friedel's case, the president there used the trust funds to pay the expenses of the corporation incurred in the ordinary and normal operation of its business. The defendant was found liable because he expended the funds for purposes other than the payment of claims as provided in the statute.

protected only by a conditional privilege, which will be destroyed by a wrongful motive. This conditional privilege of corporate representatives should be recognized in the interest of freedom in exercising discretion to protect the best interests of the corporation which they represent. . . . If directors are acting in good faith for the protection of the interests of their corporation and in the course of their official duty, they should be protected . . . . [Footnotes omitted].

*Id.* (quoting H. Ballantine, *Ballantine On Corporations* sec. 112, at 275, 276 (rev. ed. 1946)).

The trial court did not make separate findings on improper motive[2] but instead rejected Major's *Sprecher* claim in its memorandum decision, stating that:

It occurs to this judge that the comparison of *Sprecher* and the instant case is overly obtuse. Additionally, it appears that an essential element in the *Sprecher* rationale is improper motive on the part of the corporate officer. This improper motive cannot be inferred here since the fact of payment of officers' salaries in the face of . . . debts [owed to the plaintiff] is as consistent with an inference of business ineptitude on the part of [the defendant] as it is with an overt bad-faith situation.

Without explicitly stating so, *Sprecher* treated the trial court's conclusions regarding improper motive as findings of fact. 78 Wis. 2d at 41, 253 N.W.2d at 500. We will treat motive as a question of fact.

We are unable to conclude that the trial court's finding of no improper motive is clearly erroneous. Krueger testified that the officers' salaries, including his own, were not fixed and that they drew salaries as needed.

---

[2] The trial court must separately state findings and conclusions, but if a memorandum of decision is filed "it will be sufficient if the findings . . . and conclusions of law appear therein." Sec. 805.17 (2), Stats.

He also testified to the obvious, that were salaries not drawn, the money could have been used to pay the corporation's creditors, including Major. From this testimony the trial court could conclude that drawing salaries in the face of outstanding debts, while unwise, was not caused by an improper motive outside the privileged activity of corporate officer discretion. The services of officers, as well as creditors, were needed for the operation of the corporation.

## Judgment Amount

Krueger contends the trial court misconstrued sec. 779.02(5), Stats., to permit Major's recovery from the entire amount paid to T–K by the owner of the Watertown Condos, Feldner. Krueger argues the court should have limited recovery to the amount due plaintiff for its work on the Watertown project. Feldner paid T–K $7,098.00; the amount due the plaintiff for its work on the Watertown Condo project was stipulated to be $233.-75. The trial court awarded Major $7,098.00, the amount paid by Feldner to T–K for the Watertown Condo project; T–K was indebted to Major in excess of that amount. We review the application of sec. 779.02(5) to the facts independently because it presents a question of law. *Bucyrus-Erie Co. v. ILHR Department,* 90 Wis. 2d 408, 417, 280 N.W.2d 142, 146–47 (1979).

Section 779.02(5), Stats., places in trust "all moneys paid . . . by any owner for improvements . . . *to the amount of all claims* due or to become due . . . for labor and materials used *for the improvements,* until all the claims have been paid . . . ." (Emphasis added.) *Id.* "[S]uch money constitutes a [trust] fund . . . for the purpose of paying the subcontractors, laborers, and materialmen whom the contractor employed to furnish ser-

vices or material in improving the owner's real estate . . . ." *Visser v. Koenders,* 6 Wis. 2d 535, 537, 95 N.W. 2d 363, 364 (1959).

Major claimed $233.75 for work done on the improvements for which Feldner paid T–K. The other amounts due Major derive from different jobs and are unrelated to the improvements for Feldner. Under sec. 779.02 (5), Stats., Major's recovery is limited to its claim for work done on the Watertown Condos project. The trust fund was established to pay claims for the improvements paid for by the owner. The claims of other subcontractors who worked on the Feldner property would be defeated if Major were allowed to recover from Feldner's payments for work it did on other improvements. The judgment is therefore modified to award Major $233.75 and remanded for calculation of costs and interest on the modified judgment.

*By the Court.*—Judgment modified, and as modified, affirmed and remanded for calculation of costs and interest.